(Reap. Dec. 9314)

HAROLD J. RITTER CO., INC. *v.* UNITED STATES

Entry Nos. 856350; 847577.

(Decided February 17, 1959)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

LAWRENCE, Judge: The above-enumerated appeals for a reappraisement pertain to two importations of ball bearings exported from Germany.

The merchandise in reappraisement 277201–A consisted of 10,000 No. 13301 ball bearings which were invoiced and entered at United States $0.40 each, packed, and appraised at German DM 2.95 each, plus 10 per centum, less 15 per centum, less 2 per centum, plus packing of 1 per centum.

Reappraisement 281585–A covers an importation of 5,000 No. EL 6 bearings which were invoiced and entered at United States $0.26 each, packed, and appraised at German DM 1.85 each, plus 10 per centum, less 15 per centum, less 2 per centum, plus packing.

Appraisement of both importations was on the basis of foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930 (19 U.S.C. § 1402(c)), as amended, and it is not controverted that export value of such or similar merchandise, as defined in section 402(d) of said act (19 U.S.C. § 1402(d)), was no higher.

Two witnesses were called to testify on behalf of plaintiff, Jesse L. Skaggs and Edmond A. Edwards, sales manager and assistant plant manager, respectively, of the Harold J. Ritter Co., Inc., plaintiff herein.

It was their testimony that on receipt of the cases of ball bearings in issue they were opened, unpacked, and the bearings individually examined. As the result of this inspection, it was found that, of the importation covered by reappraisement 281585–A, 3,241 were rejected due to their rusted condition and subsequently were sold in this country as scrap, 1,748 were accepted, and there was a shortage of 11; of the 10,000 No. 13301 bearings contained in the importation covered by reappraisement 277201–A, 6,681 were rejected, 3,158 were accepted, and there were 161 bearings short. Of the bearings which were accepted, reconditioning processes had to be applied in order to put them in a salable condition. The 6,618 bearings which were rejected were subsequently reexported. The rusted condition of the importations was not brought to the Government's attention because by the time inspection was completed, the time period for relief had expired.

It was stated that the ball bearings were rusted to such an extent it could not have occurred in transit and apparently existed before shipment was made. Plaintiff's witnesses did not know the price at which bearings in the condition as imported were being freely offered

for sale for home consumption or for export in the country of exportation.

Dennis J. Kelly was called to testify on behalf of the Government. He stated he was a customs examiner at the United States Appraiser's Stores for 13 years and that he was familiar with and had examined the involved merchandise. It was his testimony that, as to the merchandise covered by reappraisement 277201–A, he noted that the case containing the ball bearings was a used one, but that it was not broken and his examination of the contents did not reveal anything rusted. As to the merchandise covered by reappraisement 281585–A, Kelly stated that, upon examination of the merchandise, he did not find any damage or rust. Whereas he did not examine all of the ball bearings individually, he did give a close examination to three or four bearings in each case and viewed the balance of the bearings generally. He observed the general condition of the outer case for evidence of damage or water stain but noticed nothing, and there was nothing to indicate that the bearings he did examine were any different from the other bearings in the cases.

From the foregoing resumé of the testimony of plaintiff's and defendant's witnesses, it is apparent that the testimonial evidence submitted on behalf of plaintiff and that for the defendant is patently and directly contradictory.

The premises upon which plaintiff herein contends for a lower foreign value are set forth in its brief as follows—

Some of it arrived in poor condition, a part capable of being reconditioned so as to be usable as bearings and a part in such condition that it was usable only as scrap. * * *

As to such of it as the Court may find to have consisted of scrap in its imported condition it is claimed that it should be appraised as scrap metal at the price shown by Exhibit 1. * * *

As to the portion which was reconditioned the appraisement should be the appraised value less the cost of reconditioning. This is a reasonable way of getting at the true value of the merchandise. * * *

The only other evidence presented to the court in this case is an affidavit which was received in evidence as plaintiff's exhibit 1. Said document, signed by two export managers of Kugelfischer Georg Schafer & Co., reads as follows—

We are stating to our best knowledge that during the first half of 1952 we were associated with KUGELFISCHER GEORG SCHAFER & Co., SCHWEINFURT, GERMANY in the capacity of export managers, that this company was then and is now engaged in the manufacturing of ball bearings, that we are familiar with the ball bearings shipped by us to HAROLD J. RITTER COMPANY, INC. of NEW YORK, N.Y., that in the manufacturing of such bearings there is unavoidably a certain amount of resultant scrap useable only for remelting purposes, that Kugelfischer Georg Schafer & Co., Schweinfurt, had occasion during aforementioned period of time to sell such scrap, that we are familiar with such sales, that the price at which anyone could sell it at wholesale in the markets of Germany and that

the price for inland consumption was about DM 150.—(German Marks) per metric ton (2205 pounds) and that our company made sales at such a price.

In view of the fact that the evidence before the court is in conflict as to the nature of the merchandise at the time of importation, upon which appraisement must be predicated, the above-quoted affidavit attempting to establish a foreign market value for the allegedly unusable ball bearings as scrap metal is of little or no assistance to a determination of the issue before the court.

In support of its contention that as to the portion of the ball bearings which was reconditioned appraisement should be based upon the appraised value, less the cost of reconditioning, plaintiff cites the cases of *United States* v. *Philips Co.*, 7 Ct. Cust. Appls. 497, T.D. 37110, and *Kridel, Sons & Co.* v. *United States*, 8 Ct. Cust. Appls. 250, T.D. 37522.

The *Philips* case, *supra*, involved the authority of the appraiser, pursuant to paragraph K of section 3 of the Tariff Act of 1913, to use "all reasonable ways and means" in his power to "ascertain, estimate, and appraise" the actual market value and wholesale price of dutiable merchandise at the time of its exportation to the United States, in the principal markets of the country from which the same has been imported. In the exercise of that power, the court stated it was within the appraiser's province to take into consideration such factors as the foreign freight and shipping charges, insofar as these charges may aid the appraiser in ascertaining the actual market value of the *per se* merchandise itself at its principal market of exportation. To like effect was the case of *Kridel, Sons & Co.* v. *United States, supra.*

The court, in the instant case, does not consider the decisions above referred to as the judicial precedent of "a reasonable way of getting at the true value of the merchandise" which was reconditioned, as contended by plaintiff in its brief.

Upon the record, it is deemed that plaintiff herein has failed to sustain its twofold burden of not only overcoming the presumption of correctness attaching to the appraisement of the appraiser of merchandise but also of establishing by competent evidence a different value. *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593.

The court, therefore, finds and holds that the value for the merchandise is the values found by the appraiser.