BEFORE THE SECOND DIVISION, SEPTEMBER 18, 1962

No. 67045.—Harold J. Ritter Co., Inc. *v.* United States, protest 60/5745 (New York).

LAWRENCE, Judge: Upon importation of two shipments of metal ball bearings, the collector of customs classified the merchandise within the *eo nomine* provision for metal ball bearings in paragraph 321 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 321), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, and assessed duty thereon at the compound rate of 4 cents per pound and 17½ per centum ad valorem.

Plaintiff, by its protest and the amendment thereof, makes alternative claims that the merchandise should have been granted the benefit of free entry as metal scrap, pursuant to Public Law 869, 81st Congress, 2d session, as amended by Public Law 66, 82d Congress, 1st session, or subjected to duty at the rate of 37½ cents per ton as scrap iron or steel within the purview of paragraph 301 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 301), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

By stipulation of the parties hereto, with the approval of the court, the evidence in *Harold J. Ritter Co., Inc.* v. *United States*, 42 Cust. Ct. 488, Reap. Dec. 9314, was received in evidence herein with the same force and effect as if it were taken in this case.

The testimonial record discloses that two witnesses were called on behalf of plaintiff and one witness for the defendant.

From the testimony of plaintiff's witness Jesse L. Skaggs, sales manager of the plaintiff-importer, and Edmond A. Edwards, assistant manager at the Stamford plant of the importing company, the following facts appear. The two shipments of ball bearings were shipped from New York, the port of entry, to the

Stamford, Conn., plant of Harold J. Ritter Co., Inc., and were given a 100 per centum inspection by four inspectors under the direction of the witness Edwards. Of the ball bearings covered by entry 847577, which covered 5,000 EL 6 bearings, 3,241 were rejected, 1,748 were accepted, and there was a shortage of 11 bearings. As to entry 856350, covering 10,000 No. 13301 ball bearings, 6,681 were rejected, 3,158 were accepted, and there were 161 bearings short. The reason for the rejections was that the EL 6 bearings were badly rusted on the inside and outside diameters to such an extent as to preclude reconditioning the bearings without spoiling the tolerance. As to the No. 13301 ball bearings, consisting of four component parts, namely, an outer race, inner race, cage, and balls, rusting had taken place to such an extent in the interior and outer races that it was impossible to clean them enough to make smooth-operating ball bearings. The rejected EL 6 bearings were subsequently sold as scrap and the rejected No. 13301 bearings were subsequently reexported to Germany. The rusted condition of the bearings was not brought to the attention of any Government official for the reason that, by the time the inspection was completed, "the time period had lapsed." Witness Skaggs approximated the inspection period to have taken from 45 to 60 days after the ball bearings had been shipped from New York to Stamford.

It was the testimony of Dennis J. Kelly, customs examiner at the United States Appraiser's Stores in New York City, that he had examined the No. EL 6 and No. 13301 bearings and had not found any damage or rust. If, on his examination, he had found any damage or rust, he would have notified the importer to that effect. Kelly stated, further, that there was no evidence that the packages had been exposed to moisture conditions or to unusual conditions of any kind.

The foregoing brief résumé of the evidence discloses a diametrically contradictory state of facts, which was commented upon in the reappraisement proceedings, *supra*, and we are of the opinion that plaintiff herein has failed in its twofold burden not only of overcoming the classification by the collector but also of presenting adequate and satisfactory evidence to support its claims.

It is a basic principle of customs law that merchandise is subject to classification in the condition as imported. In the instant case, we have the testimony of the customs examiner who inspected the merchandise at the time of importation that the metal ball bearings in issue were received in good condition, not damaged or rusted. What might have occurred to the merchandise within the succeeding 45 to 60 days until plaintiff's inspection was completed, it is not the function of the court to divine.

On the record here presented, we have no other course to follow but to overrule the claims of plaintiff.

Judgment will issue accordingly.